CATHARINE GRAHAM, Plaintiff in Error, *v.* THE CITY OF CA-RONDELET, Defendant in Error.

*Corporation, Municipal—Leases—Forfeiture.*—Where the lease, made by a municipal corporation, provided for a forfeiture of the lease on account of nonpayment of rent, to be made by order or resolution to be entered on the proceedings of the board of council, and the charter required all resolutions and ordinances to be approved and signed by the mayor before they should take effect, the mere signature to the minutes by the mayor as president of the board is not an approval of the resolution or order forfeiting the lease, and the forfeiture is not well taken.

*Equity.*—Where the forfeiture of a lease was a nullity, a bill in equity for relief is properly dismissed.

### Error to St. Louis Land Court.

This action, in the nature of a bill in equity, was brought by the plaintiff to be relieved against an alleged forfeiture by the defendant of a lease for ninety-nine years of lots number 29 and part of 27, in survey number one, of the commons of Carondelet, on two grounds.

I. On the ground of accident and mistake, mutual to both parties. The lot originally belonged to Bryan Mullanphy, and after his death the executors of the estate instructed their agents to pay the rents due by the estate upon all the property owned by the estate leased from Carondelet, there being quite a number, including these; that it was the custom for the collector of the city to wait upon the agent with the full list, and the agent paid him the full amount; that, in the year 1853, the collector of Carondelet waited upon the agent, and, as usual, presented the list. The agent asked him if that was all the estate of Bryan Mullanphy owed, and he replied that it was; that he paid the collector the amount without comparing it with his own list, supposing it correct, and never had any knowledge or notice that it was not correct until after the passage of the resolution attempting to

create a forfeiture; that the executor of Mullanphy first, and the plaintiff after the property was allotted to her in partition, offered to pay up, and asked to be reinstated, which the defendant declined to do, and plaintiff tendered to defendant the amount of the rent unpaid.

II. The second ground for relief was that the alleged forfeiture was not legally made; that the resolution was not approved by the mayor, as required by charter and ordinance.

The answer substantially put in issue the material facts of plaintiff's petition, with the exception of the leases to Bryan Mullanphy of the lots in question.

On the trial, defendant waived the production in court of the amount due, which was in the petition tendered.

The plaintiffs presented to the court their views of the law in relation to the legality of the forfeiture, in the shape of instructions, or declarations of law, the two first of which were given and the others refused. Instructions given are as follows, viz:

1. That the resolution read in evidence is insufficient to annul or to effect a forfeiture of the leases read by the plaintiff, unless, first, it was approved and signed by the mayor; or, second, was reconsidered by the board of council, and then passed by a vote of two-thirds of those elected by the board, after the same had been returned to the board by the mayor with his objections in writing thereto; or, third, unless the resolution was not returned by the mayor within seven days from the time it was presented to him for his approval.

2. That it cannot be shown by parol evidence that the mayor approved and signed said resolution, or that he returned it with his objections when it was reconsidered by the council and then passed again, or that it was presented to the Mayor for his approval, and that he failed to return it within seven days.

Court's own instruction:

1. From the journal and proceedings of the city council of Carondelet read in evidence in this case, it appears that

said city council passed the resolution declaring the lease in question forfeited on the 13th day of March, A. D. 1854; that said resolution was entered upon the minutes of the said board of council; and that, after said resolution was so entered, and on the 24th day of March, A. D. 1854, the mayor of said City of Carondelet signed said minutes. The court held this to be a sufficient signing and approval of said resolution by the mayor.

*Glover & Shepley*, for plaintiff in error.

The attempted forfeiture by Carondelet of the leases for the lots in question was invalid and inoperative. The plaintiff insists that the resolution was inoperative because it was not approved and signed by the mayor; and while the defendant concedes that it was necessary the mayor should approve the resolution, he contends that, in fact, it was approved and signed. It does not appear from the face of the resolution that the mayor ever saw it, or that he ever approved or signed it. Neither does it so appear from any other paper or record. The practice has been, in Carondelet, for the mayor to approve ordinances but not resolutions; that the latter are never approved unless for special purposes, and when specially desired by parties; that it is the practice of the mayor, at the end of his official term, to sign the record of the proceedings of the board for the year then ending; that this resolution was spread on the journal of proceedings.

The only evidence that the mayor approved is that he signed. The signing is not merely directory: it is a matter of substance—a part of the act to be done—and the signing is the only evidence that he approved. Both are on the same footing.

But, even if the attempted forfeiture had been legal, yet, as the default was occasioned by a mistake—the lessee supposing he had paid, and intending to pay everything that was due—and the agent of the defendant in that behalf being under a like misapprehension, equity will relieve against the forfeiture.

In Willard's Eq. Juris., p. 78, it is said, " When the legal rights of parties have been changed by mistake, equity restores them to their former condition when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other parties." (See cases from page 78 to 83 of same book, as to cases in which such power had been exercised.) It has been exercised when the party seeking relief drew the instrument which he seeks to have reformed. But in cases of *mutual* mistake such as this was, the reason for interposing is much stronger.

This doctrine has been applied to the cases—the cases of forfeiture under leases, (2 Sto. Eq. Juris., § 1315; Wil. Eq. Juris., p. 56; Davis v. Thomas, 1 Russ. & Myl. 506)— when the relief for forfeiture for non-payment of rent was not relieved against, because no accident or mistake was alleged, (p. 508.) Firman v. Lord Ormond, Beatty, 347, very similar to the present case; Chancellor Walworth, in Baxter v. Lansing, 7 Paige, 352; Coons v. North, 27 Mo. 73. So, without any accident or mistake, the court will, on slight grounds relieve against a forfeiture. (Ross v. Worsop, 1 Bro. Par. Cases, 281.)

The cases primarily decided in relation to Carondelet leases bear no similitude to this. The only one that may be relied on is the case of Huth v. Carondelet, 26 Mo. 466, which only decided that the collector was no ministerial officer.

*Casselberry*, for defendants.

The plaintiff asks relief against the alleged mistakes, forgetfulness and oversights of herself and her agents. Relief of this kind cannot be granted. Story in his Equity Jurisprudence, vol. 1, p. 121, § 105, says : " Courts of equity will not grant relief to a party upon the ground of accident, where the accident has arisen from his own gross negligence or fault, for in such a case the party has no claim to come into a court of justice to ask to be saved from his own culpable misconduct. And on this account, in general, a party

coming into a court of equity is bound to show that his title to relief is unmixed with any gross misconduct or negligence of himself or his agents." (*Id.* 119, § 101, and the numerous authorities cited by the author.)

The Supreme Court heretofore settled all questions relating to Carondelet leases, in the following cases, to wit, Taylor v. Carondelet, 22 Mo. 105; Carondelet v. Lannan, 26 Mo. 461; Huth v. Carondelet, 26 Mo. 466. According to these decisions the courts have no jurisdiction to grant relief against any forfeiture of the corporation of Carondelet, nor is a demand of rent necessary.

The councils of the municipal corporations of St. Louis and Carondelet are legislatures on a small scale. (22 Mo. 111, and 29 Mo. 599 & 600.) The powers and duties of each officer are defined by ordinance, and he cannot bind the corporation in anything except that which is within the scope of his powers and duties. Any conversation, therefore, which may have taken place between any collector of Carondelet and any agent of the plaintiff is not binding on the corporation. If any other rule prevailed, neither the corporation nor any of the numerous persons who hold second leases from the corporation would be safe in their rights for a moment.

In the case of Platte County v. Marshall and others, (10 Mo. 345,) the Supreme Court of Missouri decided that it is not necessary to the validity of records of courts in this State that they should be signed by the judge, although the law expressly requires it. The remarks of the judge, in delivering the opinion of the court, entirely cover the whole ground in dispute in that part of this case which relates to the approval of the resolution or order of forfeiture of the city council of the City of Carondelet.

The leases provide that they may be annulled by "order or resolution of the board." If the resolution, therefore, read in evidence, is not valid as a resolution according to the charter, it certainly is valid as an order. See the definition in Webster's Dictionary, and in the Law Dictionaries, title " Or-

der." The greater portion of the commons of Carondelet are held under second leases, the first having been forfeited as in this case. If this forfeiture is not valid, a great many other large and valuable estates, amounting to hundreds of arpens, held under second leases, are in the same condition.

The charter provides that every ⁻esolution, "before it it shall have authority, shall be presented to the mayor for his examination and approval, "and that if any resolution shall not be returned by the mayor within seven days from the time it shall have been presented to him for his approbation, the same shall become a law." (Acts of 1855, p. 146, § 6.) Another part of the charter requires the mayor to preside at all meetings of the board. (Acts 1851, p. 146, § 11.) If the mayor has to preside at all meetings of the board, any resolution ought to be regarded as presented to him for his approval at the time of its passage, because he is present and knows all about it, which obviates the necessity of a formal presentation. If the resolution was not disapproved by him within seven days after the day of the meeting of the board, it becomes a law by force of the charter. In this case, however, the mayor, before the expiration of the month in which the resolution was passed, did actually approve of not only that resolution but all of the other proceedings for a whole year.

This was a wholesale approval instead of a special separate retail approval, and is therefore a substantial compliance with the charter in both the letter and the spirit.

BATES, Judge, delivered the opinion of the court.

There are two points in this case. First, was the forfeiture legally made? and second, do the circumstances show a ground of equity for setting it aside?

As to the first point : The leases by the board of trustees of the Town of Carondelet to Bryan Mullanphy provided as follows : "And it is further covenanted and agreed by and between the parties aforesaid, that if at any time the rent aforesaid for six whole months shall be in arrear and unpaid, the said par-

ties of the first part, or their successors in office, may terminate this lease by order or resolution, to be entered on record among the acts and proceedings of the said board, and may enter and take possession of the demised premises free from any claim of the delinquent lessee, his executors, administrators or assigns."

The leases were dated in 1843, and were made in pursuance of a general ordinance, and contained the clause above quoted in pursuance of that ordinance. On March 1st, 1851, a new act of incorporation of "The City of Carondelet" was passed by the General Assembly, and it was thereby enacted that "all property, real and personal, privileges and rights, hitherto belonging to the Town of Carondelet, or vested in its trustees, shall be vested in the corporation hereby created."

By that act a city council was authorized, consisting of a mayor and board of council.

The city council was required to keep a journal of its proceedings.

The mayor (who is also the chief executive officer of the city) is required to preside at all meetings of the city council, and has therein a casting vote and no other.

The sixth section of the sixth article provides that "every bill which shall have been passed by the board of council, and every bill before it shall have effect as an ordinance, and every resolution before it shall have authority, shall be presented to the mayor for his examination and approval; and no bill or resolution, unless approved and signed by him, shall have any effect," save in certain cases, which do not include the present one. (Laws of 1851, p. 146.)

On the 13th day of March, 1854, the city council of Carondelet, by a resolution, spread upon its journal, that is, entered among its acts and proceedings, annulled and terminated the leases on account of the non-payment of rent for six months.

This resolution was not presented to the mayor and approved and signed by him, but he being president of the council, signed the whole journal. The plaintiff contends

that the resolution is of no authority and ineffectual to terminate the leases.

The first subject of inquiry is, what is the proper proceeding to terminate the lease? The lease itself, being the contract of the parties, specifies the proceeding which is necessary, and that is by order or resolution, to be entered on record among the acts and proceedings of the said board. The entry on the record of a certain form of words is not sufficient, for it is an order or *resolution* which must be so entered, and by the new charter there can be no *resolution* until it is approved and signed by the mayor. It is necessary, then, in order to terminate the lease, that there must be a resolution, approved and signed by the mayor, (for this the charter requires,) and entered on record among the acts and proceedings of the board, (for this the lease requires.)

The attempted forfeiture in this case is merely null and void.

For the reason that the attempted forfeiture was merely a nullity, and in consequence no cloud upon the plaintiff's title, judgment was properly rendered for the defendant.

Judgment affirmed; Judges Bay and Dryden concur.