J. D. Moon v. W. H. Smith, Chief of Police,
City of Orlando.

189 So. 835
Division A
Opinion Filed June 2, 1939
Rehearing Denied June 28, 1939

*Sam E. Murrell,* for Petitioner;

*Campbell Thornal,* for Respondent.

BUFORD, J.—The petitioner, J. D. Moon, was arrested by the Chief of Police of the City of Orlando, Florida, on November 15, 1937, for a violation of the zoning ordinance of said City. The offense committed was the alleged operation of a tourist and automobile camp in a section of the city zoned for residential purposes. The trial was commenced in the municipal court. On January 4, 1938, petitioner obtained a writ of habeas corpus from this Court returnable instanter. A return was filed and an answer to the return was filed by petitioner.

This Court referred the matter to Hon. Frank A. Smith as commissioner to hear and report the testimony. Testimony has been taken and the matter is now before this Court in the light of the entire record.

The first question presented by petitioner in his brief reads as follows:

"Where a person has been arrested and imprisoned for an alleged violation of an alleged zoning ordinance of a city, which was neither signed by the mayor nor attested by the city clerk of said city, although another ordinance of said city required that all ordinances be signed and approved by the mayor and attested by the city clerk within twenty-four hours after its passage; is such zoning ordinance a valid and legal ordinance upon which a criminal prosecution can be maintained by said city?"

Section 159, Ordinances of the City of Orlando, provides:

"Ordinances may be introduced at any regular meeting. Every ordinance shall be read on two separate days, unless the city council, by unanimous consent, order both readings on the same day. On a general revision of the ordinances,

the reading of such revision may be wholly dispensed with by means of unanimous consent. Every ordinance shall within twenty-four hours after its passage be signed and aproved by the mayor, and attested by the city clerk."

Section 2945, Compiled General Laws of 1927, contains the following:

"All ordinances passed by the city council shall be submitted before going into effect, to the mayor or person acting as such, for his approval. If approved he shall sign the same, when it shall become a law. If disapproved, he shall return the same with his objections in writing to the city council, at their next regular meeting, who shall cause the same to be entered in full upon the record of their proceedings, and proceed to consider the mayor's objections, and to act upon the same. If, upon consideration, the city council shall pass the same by a two-thirds vote of the members present, which vote shall be entered upon the records, the ordinance or ordinances shall then become law, the mayor's objections to the contrary notwithstanding. Any ordinance which shall not be returned to the city council at the next regular meeting of the council after its passage, shall become a law in like manner as if signed by the mayor or person acting as such."

Respondent contends that by reason of the above statute the signature of the mayor and attestation by the city clerk becomes immaterial.

In City of Pensacola v. Southern Bell Telephone Co., 49 Fla. 161, 37 So. 820, the City sued the telephone company for certain sums alleged to be due the City for the use of its streets in the erection of poles and lines. The telephone company filed a plea setting up an estoppel by reason of an alleged grant contained in a resolution of the board of commissioners of the City adopted July 9, 1890. The plea contained the following allegations: That the president of

the board was present and assented to the said resolution; that he presided at the meeting when the resolution was adopted, consented to its adoption, and signed and approved the minutes of said board in which the resolution was recorded. The president of the board was vested with all the power and charged with all the duties of mayor under the general laws for the incorporation of cities and towns. By Section 2, Chapter 1855, Acts of 1871 (Section 2945, Compiled General Laws of 1927 above quoted) all ordinances, after being passed are to be submitted to the mayor or person acting as such, for his approval. If approved he signs the same and they become laws. The Court held that the plea was insufficient and the alleged grant would not operate as an estoppel because the plea did not allege a sufficient compliance with Section 2, Chapter 1855, Acts of 1871, in that:

"It does not allege that after the resolution was passed it was submitted to the president, acting as mayor, for his approval, or that it was returned by him to the board with his objections, and was adopted over his veto by a two-thirds vote, or that he retained it, and it became a law without his approval."

The Court then adopted the following rule:

"In Whitney v. City of Port Huron, 88 Mich. 268, 50 N. W. 316, 26 Am. St. Rep. 291, it was held that 'where the statute requires the resolutions of a city council to be approved and signed by the mayor, the fact that he, as presiding officer, heard the resolution read, put the motion for its adoption, declared it adopted, and in fact approved it, and signed and approved the journal in which it was entered, does not dispense with his approving the resolution in the manner pointed out in the statute.' To the same effect, see State ex rel. Faber v. District Court of Dakota

County, 41 Minn. 518, 43 N. W. 389; Graham v. City of Carondelet, 33 Mo. 262, text 268."

Where the mayor or presiding officer of the city council is required simply to sign ordinances or resolutions, and it is apparent that his act is ministerial in its nature and required merely to furnish evidence of the authenticity of the enactment, and the idea of approval is not involved, the requirement is directory only, and an omission to comply therewith will not render an ordinance invalid. But where the statute requires the ordinance of a city council to be approved and signed by the mayor, by the weight of authority this requirement is mandatory and a noncompliance therewith fatal to such ordinance. 43 C. J., Municipal Corporations, Sec. 835, p. 537-538; McQuillin on Municipal Corporations (2d Ed.), Vol. 11, Sec. 723, p. 642; 19 R. C. L., Municipal Corporations, Sec. 192, p. 892; Pacific Palisades Ass'n. v. Huntington Beach, 196 Cal. 211, 237 Pac. 538, 40 A. L. R. 782. Section 2945, Compiled General Laws of 1927, as well as an ordinance of the City, provide that every ordinance passed by the city council shall be submitted to the mayor *for his approval.* Under the above authorities we must hold that this provision is mandatory.

The minutes of the city council show that the ordinance was passed, the mayor voted for the passage of same and signed the minutes. However, the original zoning ordinance shows on its face that it was never signed by the mayor or attested by the city clerk. Furthermore, the city clerk testified that the zoning ordinance was never signed.

Respondent contends that all presumptions should be resolved in favor of the validity of the ordinance; therefore, it must be presumed that the ordinance was submitted to the mayor and upon his failure to return the ordinance to the city council at the next regular meeting after passage

of same, it became a law in like manner as if signed by the mayor.

It is well settled that *where an ordinance appears regular on its face* the burden is upon him who denies its validity to show irregularity in its enactment. Morrison v. Farnell, 126 Fla. 385, 171 So. 528. The ordinance under consideration appears regular on its face, except for the fact that there is no indication as to whether it was approved or disapproved by the mayor.

It cannot be determined whether the mayor received the ordinance and signified his approval by failing to return it to the council within the statutory period. The ordinance otherwise appearing regular, it must be presumed that the ordinance was presented to the mayor and became a valid enactment by reason of his failure to return it within the required time.

Respondent in his brief contends that there has been no actual restraint of petitioner's liberty. However, the return of respondent to the writ of habeas corpus alleged that petitioner "was arrested and placed in custody under and by virtue of that certain warrant." Respondent's only contention therein is that petitioner has never been imprisoned and detained "without lawful authority." It thus appears that the actual restraint is admitted by the return of respondent.

Paragraph 1 of Section 2 of the ordinance provides as follows:

"In order to regulate and restrict the location of trades and industries and the location of buildings erected or structurally altered for specified uses; to regulate and limit the height and bulk of buildings hereafter erected or structurally altered; to regulate and determine the area of yards and other open spaces, the City of Orlando is hereby divided into districts of which there shall be ten (10) known as:

" 'A'  Residence District
" 'B'  Multiple Dwelling District
" 'C'  Multiple Dwelling District
" 'D'  Multiple Dwelling District
" 'E'  Commercial District
" 'F'  Commercial District
" 'G'  Commercial District
" 'H'  Industrial District
" 'I'  Industrial District
" 'J'  Unrestricted District

"The City of Orlando is hereby divided into ten (10) districts aforesaid and the boundaries of such districts are shown upon the map attached hereto and made a part of this ordinance being designated as the 'District Map' and said map and all the notations, references and other information shown thereon shall be as much a part of this ordinance as if the matters and information set forth by said map were all fully described herein."

The petitioner alleges in his petition for the writ, as follows:

"(b)   That although it is provided in Section two of said alleged zoning ordinance that, 'The City of Orlando is hereby divided into ten (10) districts aforesaid, and the boundaries of such districts are shown upon the map attached hereto and made a part of this ordinance being designated as the "District Map," and said map and all notations, references and other information shown thereon shall be as much a part of this ordinance as if the matter and information set forth by said map were all fully described herein,' there is not now, and never has been, any map attached to or made a part of said ordinance, neither is such map in the possession of the city clerk of the city or Orlando.  That without such map being attached to

such ordinance, the same is unintelligible and void and does not divide the City of Orlando into any zone or zones."

The return of the respondents alleges as follows: "Further answering paragraph 3, Respondent denies that the purported copy of said Ordinance attached to the Petition and made a part thereof is a complete copy of the same. Respondent would show unto the Court that the copy attached to said Petition is not complete in that it does not include a copy of the District Map referred to and particularly described in Section 2 of said Ordinance, which said District Map is and always has been a part of the said Zoning Ordinance."

The allegations of the petition and the allegations of the return present an issue of fact which must be determined on evidence. If the "district map" referred to in the above quoted provision of the ordinance was in fact not attached to and made a part of the ordinance, then there was nothing in the ordinance to advise the public as to what constituted the several zones attempted to be established by the ordinance, and without this definite determination in the ordinance the same was and is unenforceable.

If the district map referred to in the ordinance had been attached thereto and thereby made a part thereof and had shown that the above quoted section of the ordinance purported that it did show, then the determination of affected areas would have been sufficient and the ordinance would have been valid in this regard.

We have carefully examined and considered the evidence taken before the Honorable Frank A. Smith pursuant to our order heretofore made and we necessarily conclude therefrom that the "district map" mentioned in Section 2 of the ordinance, *supra,* was not "attached to" and thereby made a part of the ordinance. A certain photostatic copy of a map identified as the zoning map was introduced in

evidence but no copy of the ordinance introduced in evidence shows any map attached and made a part thereof. The ordinance applied only to the map attached thereto and without such map so attached there was no description of the several zones attempted to be established contained in the ordinance. A map or plat could have been otherwise identified in and made a part of the ordinance, but this was not done.

Because of the lack of definiteness of description and location of the several zones, the ordinance was ineffectual to establish the several zones.

Having reached the conclusion, *supra*, it becomes unnecessary for us to discuss other questions presented in briefs.

The petitioner should be and is hereby ordered discharged.

WHITFIELD and BROWN, J. J., concur.

CHAPMAN, J., concurs in conclusion reached.

TERRELL, C. J., and THOMAS, J., dissent.