(No. 26038.—

THE COUNTY OF WINNEBAGO, Appellant, *vs.* JAMES R. CANNELL *et al.* Appellees.

*Opinion filed April 10, 1941.*

MAX A. WESTON, State's Attorney, (ROY F. HALL, of counsel,) for appellant.

STANLEY H. GUYER, and RAPHAEL E. YALDEN, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The county of Winnebago, by its proper officers, filed its sworn complaint in equity to enjoin the violation of

what was alleged to be a county zoning ordinance, which it was said had been adopted October 4 or 5, 1938. In the circuit court a decree was entered dissolving a temporary injunction which had been issued and dismissing the complaint for want of equity. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires the appeal to come directly to this court and the cause is here by virtue of that certificate. Only a brief statement of the facts is necessary to an understanding of the case.

The record shows that the late, well-known cartoonist, Sidney Smith, who was killed in an automobile accident in 1937, had purchased a large farm in the town and near the village of Shirland, in Winnebago county, Illinois, about the year 1935; that he improved that farm rather lavishly, erecting among other buildings, a large modern barn. This building was 30 or 40 feet wide and about 100 feet long and of sturdy construction. Smith appears to have been much interested in the local community of Shirland and became one of the members of the Shirland Recreation Club, which sponsored a baseball team and local rural entertainment. After he built the large barn on his farm he gave the use of it for barn dances, given by the recreation club, and the first of such dances, which was given shortly before Smith's death, attracted a crowd of about four thousand people and raised $300 or $400 for the recreation club. After Smith's death, interest in the club appears to have dwindled, although there is no evidence it was ever actually discontinued. The defendants, Conley, who was a tenant on the farm, and Cannell, who was a member of the board of supervisors of Winnebago county, representing the town of Shirland, made some effort to revive these dances, but apparently without any great determination or success until they were threatened with a prohibition under the Winnebago county zoning ordinance. Thereafter, they held four dances, after quite a bit of acrimonious conduct

before the board of supervisors, and these dances were held obviously and admittedly for the purpose of forcing a test of the validity of the ordinance.

By far the largest portion of a five-hundred-page record is taken up with evidence concerning the construction of the barn, its safety features, such as means of ingress and egress, its water supply and toilet facilities, with the character and kind of dances and the conduct of patrons. All of this evidence may be summarized by saying that the barn is above the average for sound construction; that the exit facilities are probably inadequate for a large crowd, and that the toilet facilities consist of the usual rural, outdoor variety. All of the evidence indicates that there was never any liquor sold at any dance nor permitted on the premises, and that there was never any intoxicated person permitted at any dance; that the crowds were orderly, jolly, well-behaved and in no way different than might be expected at any respectable rural gathering for a barn dance. The record in this behalf shows that the entire matter was above criticism. We dismiss these things with little comment because they are immaterial to the issues. Neither the character of the building, nor the conduct of the patrons at the dances could add to or detract from the validity of the ordinance, as that is concerned only with the kinds of business that may be carried on in said districts. Nothing in it pertains to the type of construction of the building, the means of ingress or egress or fire prevention. Neither does it apply to the conduct of the persons at dances anywhere.

Defendants attack the validity of the ordinance on several grounds. By their answer, they allege that no map or plat was ever adopted or attached to the ordinance, as provided by the resolution of the board of supervisors, and it is worthy of notice that in reply to the answer this point is not challenged. They also insisted that the alleged ordinance deprived the defendants of property without due

process of law; that it constituted a taking of property for public use without compensation; that it abridged the privileges and immunities of the citizens of the United States contrary to the fourteenth amendment; that the classifications and restrictions in it had no tendency toward the protection of the public health, morals, safety or general welfare, nor any substantial connection therewith, and that the ordinance was unreasonable and discriminatory and, therefore, void.

The purported ordinance, without any legal or other description of delineating lines, divides the county into nine districts, described as "A," "B," and "C" residential districts, local business districts, agricultural districts, general business districts and industrial districts. The only attempt in the ordinance to delineate these districts is "as shown on the Use District map attached hereto and expressly made a part of this ordinance, and Use Districts are hereby created in Winnebago county, outside of the limits of cities, villages and incorporated towns as the same are designated on the Use District map hereto attached. The boundaries of said Use Districts are shown upon the map attached hereto and all notations, dimensions and reference pertaining to such boundaries as shown upon such map or attached thereto shall be as much a part of this ordinance as if they were fully described herein." The ordinance, in several other places, refers to maps attached to the ordinance, and without maps it is entirely meaningless. On this point, the trial court found, "without the Use Maps the ordinance means nothing to one seeking to ascertain from the ordinance, itself, to what use a certain parcel or property can be put or what are the regulations controlling any particular piece of property. No evidence was introduced as to where such Use Maps may be found and even if introduced, could scarcely make up the defect in the ordinance itself. So far as the record discloses, there are no Use Maps."

The trial court, on this one point, found that there was no valid zoning ordinance and dismissed the bill for want of equity. Obviously, the point is decisive.

A belated effort to overcome this defect was made in the trial court and the history of that matter is as follows: The hearing of the case before the court was closed and the cause was taken under advisement on October 26, 1939. More than seven months thereafter, the court intimated to counsel what its decision in the case would be, and that it was ready to decide the case. This was on June 10, 1940. On this same day, June 10, 1940, an amendment was offered by the plaintiff which stated that on June 11, 1940, the board of supervisors had passed a certain resolution purporting to correct its record to show that there had been a map attached to the alleged ordinance at the time it was considered. The record does not disclose how counsel could know on June 10 that a resolution had been passed the day following June 10, but this is the exact situation shown by pages 77 and 73 of the record. This purported amendment was not under oath and was not supported by any affidavits. On its face it was contrary to the full record of the board of supervisors which had been previously introduced in evidence on the hearing, which had previously, on the hearing, been once amended to show the truth of the matters set forth, and which had been proved by many witnesses to be a full, complete and accurate record of all proceedings concerning the ordinance in question. The court denied leave to file this amendment on July 22, 1940, and on the same day, at the same time, entered the decree dissolving the temporary injunction and dismissing the complaint for want of equity.

The appellant insists on authority of such cases as *Town of Kaneville* v. *Meredith*, 361 Ill. 556, that it should have been permitted to amend because a decree in chancery speaks from the date of the decree and not from the time of the commencement of the suit. Those cases are not applicable

to this record because the facts as to the passage of the ordinance were the same at one time as the other. It also relies on *Nelson* v. *Randolph*, 222 Ill. 531, in which case, however, affidavits in support of the amendment were presented and a reasonable excuse was given for not asserting the matter sooner. In other cases cited, such as *Smith* v. *Lincoln-Catalpa Building Corp.* 349 Ill. 530, the application for leave to amend was made before any proofs were taken.

The rule as announced by many decisions of this court is that if issue has been formed, the allowance of an amendment is within the discretion of the trial court and that this court will not reverse a decree for a refusal to allow an amendment unless there has been a manifest abuse of discretion. (*Hoerrmann* v. *Wabash Railway Co.* 309 Ill. 524; *Walker* v. *Struthers,* 273 id. 387; *Foss* v. *People's Gas Light and Coke Co.* 241 id. 238.) It is also the rule that it is not error to refuse such an amendment where no excuse is shown for not putting its substance in the original pleading and its truth is not shown by affidavit or deposition. *Higgins* v. *Curtiss,* 82 Ill. 28; *Fielding* v. *Fitzgerald,* 130 id. 437.

There are many reasons why there was no error in refusing this amendment. It was an offer not under oath to amend a complaint that was under oath; by reason of the dates it would appear on its face that the facts stated could not yet have happened; it was contrary to a full and complete record taken under oath more than seven months previously and verified by several witnesses; it concerned a matter which had been set forth in the original answer filed nearly a year previously, and again set forth in a motion to dissolve the temporary injunction (which appears never to have been passed on) and not denied in the reply. The ruling of the trial court on this matter was correct.

The record of the proceedings of the board of supervisors leaves it far from clear that any ordinance at all

was adopted. It seems more likely that the only vote appearing of record was on a motion to approve the report of the zoning commission than on the ordinance itself, and the original tentative zoning ordinance of the previous year is not in the record at all. However, neither this point nor the other defenses presented need be considered because the matters so far discussed are decisive of the case.

The circuit court did not err in dismissing the complaint for want of equity and its decree is affirmed.

*Decree affirmed.*