RUTH M. KEENEY et al., Appellants, *v.* VILLAGE OF LEROY et al., Respondents.

Fourth Department, December 3, 1964.

*John R. Graney* and *Paul A. Boylan* for appellants.

*Louis P. Brady, Jr.,* for Village of LeRoy and others, respondents.

*J. Eugene McMahon* for LeRoy Council No. 2936, respondent.

Bastow, J. P. Plaintiffs appeal from a judgment dismissing their complaint and declaring that a Zoning Ordinance enacted June 12, 1962 is constitutional and was properly adopted.

The proof discloses that after two abortive attempts to amend the then existing Zoning Ordinance, the Village Board retained the services of a firm of city planners. These activities culminated in a notice of a public hearing to be held on May 25, 1962 '' in the matter of adopting an amendment to the zoning ordinance ''. In fact an entirely new ordinance was there presented and discussed at some length by the proponents and objectors to some of the changes made therein and reflected on a map displayed at the meeting to which reference will be made hereafter.

This new ordinance was adopted by the board on June 12, 1962 '' as recommended to the Board by the Planning Commission and the planning consultant.'' It became effective July 2, 1962. We are here concerned with two provisions of the ordinance. Article II thereof establishes certain districts, including C-1 (Limited Commercial); C-2 (General Commercial) and C-3 (Central Commercial). Article III defines the permitted uses in these and the other named districts. Section 2.1 of article II provides in part that '' Said districts are shown, defined and bounded on the map accompanying this ordinance, entitled VILLAGE ZONE MAP, dated June 12, 1962, as amended and filed in the office of the Village Clerk. Said map and all explanatory matter thereon is hereby made a part of this Ordinance.''

We turn to a consideration of the maps (three in number) that were before the trial court. Each bears the date '' 1962 '' but none bears the date '' June 12, 1962 ''. Each differs from the other as to the placing of certain properties in C-1 or C-2 Districts. Presumably, although the proof is far from clear, Exhibit 6, the so-called '' colored map '' (district outlines are marked in varying colors) was the map before the public hearing. It was not there marked as an exhibit. At the public hearing the planning consultant in answer to an inquiry described the C-1 District as the '' red section out here in the diagonal lines ''. No such area is shown on the map. He testified at the trial herein that this was the map used at the hearing '' to the best of my recollection ''. The Village Clerk '' assumed '' it was the map presented at the hearing.

After the public hearing the consultant took the '' colored map '' to his office in Syracuse to make reproductions and a second map (Exhibit 8) was left with the Village Clerk. On July 5, 1962 (three weeks after the adoption of the ordinance and three days after its effective date) the consultant sent to the Village Clerk a '' final Village zone map '' (Exhibit 7). In an accompanying letter the consultant wrote that the planners had reviewed the matter of the C-2 District on West Main Street; that the '' proposed map '' (presumably Exhibit 6) was incorrect as it included one property that should have been omitted and omitted two properties that should have been included. Significantly, it was stated that legal action should be taken '' to have the zone map agree with the master plan. Under the assumption this change will be made immediately, we have prepared the final Village zone map showing the revised boundary and enclose two copies for your office.'' The board took no action to amend the map or the recently enacted ordinance.

In summary, the so-called '' colored '' map (Exhibit 6) presumably was before the public hearing. This showed five properties on the north side of West Main Street in the C-2 District. The second map (Exhibit 8) displayed in the Clerk's office from May 25 to July 5, 1962 and the only map before the board when the ordinance was adopted, omitted three properties (Maloney, Widdowson, and Veitel) from the C-2 District and placed them in a C-1 District. The third map (Exhibit 7) posted by the Clerk and considered by him to be the '' official '' map replaced the Maloney and Widdowson properties in the C-2 District and added one property (Veitel) to that district. The owner of the latter property appeared at the public hearing and was a vocal participant therein. The other two owners

(Maloney and Widdowson) are plaintiffs herein. Their properties on the original map were in a C-2 District; they were transferred on the second map to a " C-1 " District and finally on the so-called " official " map were retransferred to the " C-2 " District.

The trial court in its decision made no mention of the third map (Exhibit 7). It found that the Clerk inadvertently posted the map (Exhibit 8) and that the slight discrepancy between that map and the map (Exhibit 6) before the public hearing did not justify striking down the ordinance.

We are unable to determine which map is the " official " one. The Village Clerk testified at one place that he " assumed " the " colored " map (Exhibit 6) was the " official " one but again testified that the third map (Exhibit 7) had been displayed on the wall of his office from the time of its receipt until the Friday before the trial commenced. We conclude that all of this constituted a grave defect that vitiated the ordinance. Minimally every property owner is entitled to know with precision in which one of two districts his property has been placed. The determination should not be left to the village officials to decide from time to time by whim or caprice which one of three maps is the " official " one.

But there were other and perhaps graver defects in the enactment of the ordinance. Subdivision 2 of section 178 of the Village Law provides, among other things, that every zoning ordinance and amendment thereto shall be entered in the minutes of the Village Board and that the ordinance and map shall be posted and an affidavit of posting filed with the Clerk.

Neither ordinance nor map was here entered in the minute book. The Clerk testified that the ordinance was " too large to put in the minutes " so he placed it in the ordinance book and the " map is on file on top of my cabinet, so that is the closest it could get to it ". Respondents place reliance on *Quick* v. *Town of Owego* (11 A D 2d 285, affd. 8 N Y 2d 1144, amd. 9 N Y 2d 649) but that decision is clearly distinguishable. There the court held that a similar provision of the Town Law (§ 264) did not require that a large map be entered in the minutes of the board. The ordinance, however, had been entered in the minutes and from this fact the court reasoned that physical incorporation of the map in the minutes was not required. But this has small relevancy to the contention of respondents that it is unnecessary to enter either ordinance or map in the board minutes. (To the contrary see Anderson, Zoning Law and Practice in New York State, § 4.14.)

We consider next the statutory requirement that an affidavit of posting of ordinance and map shall be filed with the Village Clerk. This was not accomplished herein. What is on file is an unverified statement of such posting. The more serious defect is that the date of such posting is not set forth therein. The Village Clerk, as a witness herein, testified " I don't know (when they were posted), it should have a date on it." From the fact that publication was on June 21, 1962 the witness concluded that posting must have been before that date " because the weekly paper comes out but once a week."

We conclude that these several omissions and defects in adopting the ordinance were more than mere irregularities. The procedural steps required by the enabling acts of municipalities are regarded as mandatory and failure to comply therewith invalidates the enactment. (*Barry* v. *Town of Glenville,* 8 N Y 2d 1153; *Village of Mill Neck* v. *Nolan,* 233 App. Div. 248, affd. 259 N. Y. 596; *Town of Schroeppel* v. *Spector,* 43 Misc 2d 290; Anderson, Zoning Law and Practice in New York State, §§ 4.01, 4.15.)

The judgment should be reversed and judgment entered declaring the ordinance enacted June 12, 1962 to be invalid.

GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs to appellants against the respondent village and judgment granted declaring the ordinance to be invalid.