410 So.2d 575 (1982)
Buford Lee JENRETTE, Petitioner,
v.
Louie L. WAINWRIGHT, As Secretary, Department of Corrections, State of Florida, Respondent.
No. 81-2149.
District Court of Appeal of Florida, Third District.
February 16, 1982.
Rehearing Denied March 15, 1982.
*576 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for petitioner.
Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., for respondent.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
On January 27, 1982, this court, after hearing argument on the petition for writ of habeas corpus and the State's response, granted the writ and directed the respondent to release forthwith the petitioner from custody.[1] We now set forth the reasons for our action.
Jenrette was incarcerated at the Dade Correctional Institute in the custody of the respondent. He claimed that as of October 5, 1981, he was being unlawfully held under an order of the Florida Parole and Probation Commission, which established Jenrette's presumptive parole release date as May 5, 1983.
Jenrette claimed that the Commission unlawfully increased his salient factor score, which, in turn, changed the matrix time range for his offense category from 18 to 39 months to 58 to 79 months.[2] Had his salient factor score not been increased, Jenrette would have been entitled to be released at the end of 39 months, or in October 1981, not, as the Commission decided, in 58 months, or May 1983.
*577 The increase of the salient factor score was first explained[3] by the Commission in its order entered on Jenrette's request for review:
"... The Commission on May 27, 1981, did not agree with the recommendation of the Hearing Examiners[4] and changed the salient factor score from 0 to 2 based on a conviction in Atlanta, Georgia on August 25, 1951 for Simple Larceny and a sentence of 12 months.
"... The conviction and sentence at age 16 gives the inmate a new salient factor score of two, however, it does alter his matrix time range. The Ancient History Rule does not apply in this area according to Florida Administrative Rule 23-19.04.[5]
"The appeal is denied, and the presumptive parole release date remains the same. You were set at the bottom of the matrix range of 58 to 79 months with a presumptive parole release date of May 5, 1983."
This decision in hand, Jenrette petitioned this court for a writ of habeas corpus. The petition was accompanied by Jenrette's affidavit, which stated that in August 1951, when, at age 16, he was convicted in Georgia, he was financially unable to employ counsel to represent him; he was not advised of his right to, or provided with, appointed counsel; and he was convicted and sentenced to twelve months in prison without the assistance of counsel.
At oral argument, the respondent, for the first time, conceded that the facts set forth in Jenrette's affidavit should be accepted as true. We would have done this even in the absence of this late and begrudging concession.[6] Section 79.01, Florida Statutes (1981), expressly provides that a habeas petitioner may meet his initial burden of proof, see, e.g., Coleman v. State ex rel. Race, 118 Fla. 201, 159 So. 504, 505 (1935), by affidavit:
"When any person detained in custody, whether charged with a criminal offense or not, applies ... for a writ of habeas corpus and shows by affidavit or evidence probable cause to believe that he is detained without lawful authority, the court ... shall grant the writ forthwith ... returnable immediately."
*578 Wood v. Cochran, 118 So.2d 193, 194 (Fla. 1980); see also Scott v. Estelle, 567 F.2d 632, 633 (5th Cir.1978).
Jenrette having satisfied his burden, and this court having issued its preliminary writ, it was incumbent upon respondent to controvert the averred facts. The respondent's failure to even allege, much less prove, that the conviction at issue was valid required us to accept Jenrette's affidavit as true. Vellucci v. Cochran, 138 So.2d 510, 511 (Fla. 1962); State ex rel. Libtz v. Coleman, 149 Fla. 29, 5 So.2d 60 (1941); Moon v. Smith, 138 Fla. 410, 189 So. 835, 837-38 (1939).
It is therefore an established fact that Jenrette's 1951 Georgia conviction was obtained without the assistance or offer of counsel despite his insolvency. That conviction, which resulted in a twelve-month commitment, is accordingly invalid under the Sixth and Fourteenth Amendments. Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Even as a prior uncounseled conviction cannot be used to penalize an accused in a subsequent prosecution or sentencing, Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), a prior uncounseled conviction cannot be used in determining eligibility for parole. Moore v. Florida Parole and Probation Commission, 289 So.2d 719 (Fla.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974). As the court stated in Moore:
"[W]hile there is no absolute right to parole, there is a right to a proper consideration for parole. And this should be free from the consequences of a conviction not meeting the standards of Gideon v. Wainwright, [supra]. The Parole Commission is required, as any other body, to comply with constitutional requirements; it cannot deny parole upon illegal grounds or upon improper considerations...." Id. at 720.
A "commitment" to prison based upon an unlawful conviction is quite clearly as unlawful as the judgment which supports it. With Jenrette's prior conviction or commitment eliminated from consideration, as Moore requires, his proper salient factor score is zero, and the matrix time range which applies is 18 to 39 months, not 58 to 79 months.
Finally, we address respondent's assertion that even if the 1951 conviction of petitioner is invalid, "the Commission should be given the opportunity to recalculate the Petitioner's presumptive parole release date," and to reinstate the aggravating factors found by the hearing examiners, but not relied upon by the Commission. Relying upon Section 947.16(4), Florida Statutes (1979), respondent asserted that "[i]f the Commission is unable to utilize the 1951 conviction to extend the Petitioner's presumptive parole release date, it may well decide to follow the recommendation of the hearing examiner and impose as an aggravating factor the concurrent sentences received by the Petitioner."
The Commission might well have decided to do what respondent suggests; however, Florida law forbids it. First, the very provision relied upon by respondent, Section 947.16(4), specifically states that the Commission may from time to time review the parole date established for an inmate, but that "the presumptive parole release date shall not be changed except for reasons of institutional conduct or the acquisition of new information not available at the time of the initial interview." In the present case, the parole examiner recommended a nine-month aggravation of the presumptive parole release date based upon a concurrent sentence imposed upon petitioner. This recommendation was specifically rejected by the Commission. It is self-evident that the existence of the concurrent sentence is not new or previously unavailable information upon which the Commission could rely under Section 947.16(4).
*579 Moreover, the decision in McKahn v. Florida Parole and Probation Commission, 399 So.2d 476 (Fla. 1st DCA 1981), with which we agree, bars recomputation of the presumptive parole release date in the manner suggested by respondent. In McKahn, the petitioner asserted that the Commission had improperly characterized the offense for which he had been convicted in determining the appropriate matrix range. The First District Court of Appeal issued an order to show cause and thereafter ordered the Commission to reduce the matrix range appropriately and to recalculate the presumptive parole release date. After receiving this order, the Commission informed the court that it had previously reduced the matrix range, but had added an additional aggravating factor not previously found "and reached the same presumptive parole release date as previously entered." McKahn v. Florida Parole and Probation Commission, supra, at 477-78. The court held this coincidental revision unlawful:
"Under the circumstances, the Commission was vested with no discretion to change the offense characteristic, or the salient factor score, or to add an additional aggravating factor in its determination of a parole date. Section 947.172(3) unambiguously states that a presumptive parole release date `shall become binding on the commission when agreement on a ... date is reached.' The only explicitly stated exceptions to the binding effect of the date are `for reasons of institutional conduct or the acquisition of new information not available at the time of the initial interview.' Section 947.16(4). Additionally, we are of the opinion that Section 947.16(4) should be considered in pari materia with Section 947.173(3), permitting the Commission to modify a parole release date `for good cause in exceptional circumstances.' The record fails to show the applicability of any exceptional circumstance. What the Commission has sought to do here is to circumvent the effect of the statute precluding the changing of a presumptive parole release date  without showing the existence of any statutory exceptions, or offering any exceptional circumstances for the modification  by manipulating the criteria upon which parole decisions are made, thereby reaching the same date previously established. This it cannot do." Id. at 478.
The ruling in McKahn that the Commission had no authority to "add an aggravating factor after it had previously entered its order fixing a presumptive parole release date," 399 So.2d at 478, is dispositive of the respondent's request for remand to the Commission.[7]
For the foregoing reasons, we have granted the writ of habeas corpus.
NOTES
[1] Habeas corpus is a proper method of challenging the legality of imprisonment claimed to have been rendered invalid by later events, see, e.g., Sneed v. Mayo, 66 So.2d 865 (Fla. 1953); Johnson v. Lindsey, 89 Fla. 143, 103 So. 419 (1925), and the proper method of challenging the validity of a presumptive parole release date when the prisoner claims his entitlement to immediate release. See Smith v. Crockett, 383 So.2d 1166 (Fla. 3d DCA 1980); compare Roberson v. Florida Parole and Probation Commission, 407 So.2d 1044 (Fla. 3d DCA 1982).
[2] The presumptive parole release date is fixed under Chapter 23-19 of the Florida Administrative Code. First, a "salient factor score" is computed under Florida Administrative Code Rule 23-19.04; this score is based upon number values which are assigned to various categories (e.g., prior convictions, the length of time previously served in prison, prior parole revocations, etc.) relevant to the inmate. Second, the offense of conviction is located on a scale promulgated by the Commission under Rule 23-19.01, the offense ranging from "Low (Least Serious)" to "Greatest (Most Serious-IV)." Specific ranges of months to be served for each crime are established in the matrix, with the number of months included in each range dependent upon the salient factor score. Third, a specific term within the appropriate range is fixed. This term can be aggravated beyond the maximum number of months or mitigated below the minimum number of months based upon appropriate factors. See Fla. Admin. Code Rule 23-19.03; Battis v. Florida Parole and Probation Commission, 386 So.2d 295 (Fla. 1st DCA 1980).
[3] The State moved to dismiss Jenrette's petition for writ of habeas corpus on the ground that Jenrette failed to exhaust his administrative remedies by seeking review of the Commission's ruling under Section 120.54(5), Florida Statutes, or Section 120.56, Florida Statutes. See Comer v. Florida Parole and Probation Commission, 388 So.2d 1341 (Fla. 1st DCA 1980). But Jenrette did take an administrative appeal, and it was only when the Commission issued its ruling thereon that he learned that his salient factor score had been increased by the impermissible consideration of a counselless conviction or commitment. There is no provision in Chapter 120 for a second appeal, and we will impose no double exhaustion requirement on Jenrette.
[4] The hearing examiner panel gave Jenrette a salient factor score of zero, resulting in a matrix time range of 18 to 39 months; fixed the term at the maximum of 39 months; and, finding a concurrent sentence imposed in another case an aggravating factor, added nine months to that. The presumptive parole release date was set by the hearing examiner panel as June 29, 1982.
[5] Jenrette's petition claimed that (1) the Commission's Ancient Prior Record Rule, Rule 23-19.04(1)(h) ["If an offender has maintained a conviction free record in the community ... for a period of 10 consecutive years, convictions or commitments prior to such 10 year period should not be counted for computation of Rule 23-19.04(1), (6) ...], itself prohibited consideration of his 1951 conviction or commitment; and (2) even if the Rule did not apply, the conviction was rendered without counsel and could not constitutionally be considered. The respondent argued that the Ancient Prior Record Rule, by its very language, does not bar consideration of a commitment prior to the age of eighteen under Rule 23-19.04(4). As the petitioner pointed out, the irony of this argument is that were the conviction qua conviction considered, Jenrette's salient factor score would be 1, with no extension of his release date, but by considering the commitment, the salient factor score is 2 and the release date extended. Our grant of habeas corpus is based on petitioner's constitutional argument, and, therefore, we do not address the applicability of the Ancient Prior Record Rule.
[6] The Attorney General has ready access to records which could have refuted Jenrette's affidavit. See, e.g., State v. Coney, 294 So.2d 82 (Fla. 1974). It was, therefore, dilatory for respondent to merely assert, and to persist in this assertion during the several months while these proceedings pended, that the affidavit of petitioner was insufficient.
[7] We need not reach the question whether if the Commission were to add the once-rejected aggravating factor after the petitioner's successful attack upon the Commission's use of the 1951 counselless conviction, this addition would constitute vindictiveness of the sort condemned by North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and violate due process.