**BOARD OF COUNTY COMMISSIONERS of Elbert County, Plaintiff–Appellee,**

v.

**Kenneth G. ROHRBACH, Karen L. Rohrbach, Paul K. Rohrbach, and Compost Express, Inc., a Colorado corporation, Defendants–Appellants.**

No. 08CA1901.

Colorado Court of Appeals, Div. IV.

Sept. 3, 2009.

Berg, Hill, Greenleaf, & Ruscitti, LLP, Josh A. Marks, Heidi C. Potter, Melanie B. Lewis, Boulder, Colorado, for Plaintiff–Appellee.

Campbell, Killin, Brittan & Ray, LLC, James D. Thorburn, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge CARPARELLI.

In this zoning enforcement action, defendants, Kenneth G. Rohrbach, Karen L. Rohrbach, Paul K. Rohrbach, and Compost Express, Inc. (the Rohrbachs), appeal the judgment in favor of plaintiff, the Board of County Commissioners of Elbert County (the Board), which enjoined the Rohrbachs from operating their commercial composting business. The Board was not able to locate and introduce a copy of the 1983 zoning map that was incorporated into the zoning regulation and established the zoning of the Rohrb-

achs' parcel. As a result, we reverse and remand.

## I. Background

The Rohrbachs own an eighty-acre parcel in unincorporated Elbert County. In 2005, they began operating a composting facility on the parcel, using horse manure that was brought from other sites. A county official told them the composting facility was not permitted as a use by right under the county's zoning regulations and that either a temporary or special use permit was needed to continue its operation.

Based on this information, the Rohrbachs sought a temporary use permit in July 2005. County officials recommended approval subject to certain conditions, and the Board held a hearing on the matter. However, the Rohrbachs withdrew their application in June 2006 before the Board acted. After the Rohrbachs continued operating the facility, the Board instituted this action in November 2006 to enjoin its operation.

## II. Trial Court Proceedings

At trial, the Board asserted that the Rohrbachs' parcel was zoned "A–AGRICULTURE" and that the composting operation was not a permitted use by right under the terms of that classification. The agricultural zoning regulation listed several uses by right, including: accessory uses and building; agriculture recreational uses; farming, ranching, and forestry (tree) farming; gardening, greenhouses, and plant nurseries; home occupation; and household pets. The Board contended that because the regulation did not specify composting as a use by right, and because the horse manure was not produced on the parcel as a byproduct of one of the listed activities, such as farming or ranching, the composting operation did not qualify as a use by right and, absent a temporary or special use permit, violated the regulation.

The Rohrbachs' central argument was that the zoning regulations were invalid and unenforceable because portions of them had not been properly enacted. They contended that the Board had not followed required statutory procedures when adopting some regulations and that there was no proof that other

regulations had ever been adopted. They also contended that the Board could not establish that their parcel was zoned "A–AGRICULTURE" because the Board had no copy of the official zoning map that was incorporated into the regulations.

The court found that the Board had proved that the zoning regulation was properly adopted, and that the Board had met its burden of proving that the parcel was zoned agricultural. To make these findings, the court relied on a map that was attached to the repealed 1974 zoning regulations and on the testimony of the county's former and current planning directors, both of whom testified that the parcel was zoned agricultural. Based on these findings and its conclusion that the composting operation was not a use by right under the terms of the agricultural zoning regulation, the court enjoined the Rohrbachs' composting operation. This appeal followed.

### III. Standard of Review

We review the trial court's legal conclusions de novo. *Hartsel Springs Ranch, Inc. v. Cross Slash Ranch, LLC,* 179 P.3d 237, 239 (Colo.App.2007). However, we defer to the trial court's findings of fact unless they have no support in the record. *Tatum v. Basin Res., Inc.,* 141 P.3d 863, 867 (Colo.App.2005).

### IV. Zoning

The Rohrbachs contend that the trial court erred in granting the injunction because the Board did not establish that their parcel was zoned "A–AGRICULTURE." We agree.

To enjoin a zoning violation, a county must prove both the adoption and violation of a particular regulation. *Bd. of County Comm'rs v. Hawkins,* 690 P.2d 1299, 1300 (Colo.App.1984); *see also* § 30–28–124(2), C.R.S.2008.

### A. The 1983 Regulation

At trial, the Board introduced copies of the amended zoning regulations it adopted on July 5, 1983. The regulations provide:

The location of the zoning areas hereby established is shown on the accompanying map entitled "Official Zoning Map of El-bert County," dated July 5, 1983, which is hereby made, along with explanatory matter thereon, a part of this Regulation. The Official Zoning Map, together with each amendment thereto, shall be filed in the office of the Elbert County Clerk; who shall also maintain a current map at all times. All amendments to the map made in conformity with this regulation shall be recorded on the map within thirty (30) days of its adoption, showing general location, effective date, and nature of the change.

. . . .

The current Zoning Map and Zoning regulations will be available to the public in the Elbert County Planning Department and should be consulted for zoning information.

Thus, according to the plain and ordinary meaning of the words of the zoning regulation, the Board showed the zoning areas it was establishing on a map dated July 5, 1983, which it adopted and incorporated by reference as part of the regulation.

### B. Various Zoning Maps

The County's deputy clerk testified that she had seen the July 5, 1983 map sometime in the past, but it could not currently be located. Thus, the Board had not found the original or any copy of the July 5, 1983 map. At trial, in an effort to establish the parcel's zoning classification, the Board introduced four historical zoning maps into evidence:

1. A map dated July 18, 1966 that indicated the Rohrbachs' parcel was zoned agricultural. This map accompanied and was incorporated into the County's 1966 zoning regulations. The Board repealed this version of the regulations in 1973.

2. A map dated January 1973 that indicated the Rohrbachs' parcel was zoned agricultural. This map accompanied the County's 1974 zoning regulations and was repealed in 1978. However, the 1974 regulations referenced and incorporated a map dated December 18, 1972. The Board did not present a map dated December 18, 1972.

3. An undated map that accompanied the County's 1978 zoning regulations, which were repealed by the 1983 regulations. This map does not indicate the zoning classification of the Rohrbachs' parcel.

4. A map dated May 8, 1983 that does not indicate the zoning classification of the Rohrbachs' parcel. This map did not accompany any zoning regulations, and the Board characterized it as a "draft."

The Board also introduced a map that was annotated "Zone Classification Approval." It was dated October 5, 1998, and bore the signature of the County's planning director. The map indicated that the Rohrbachs' parcel was zoned agricultural. It was one of several township maps created from maps in the planning department that contained information about zoning. The planning director testified that, before approving the map, he reviewed former zoning maps, verified their content, and approved them as current zoning maps. However, there is no evidence that the Board ever adopted any of these township maps or incorporated them into the zoning regulation.

## C. Lack of a Zoning Map

This is an issue of first impression in Colorado, and we are mindful of its importance in Elbert County and elsewhere in the state. Similar issues have arisen in other states, and we now turn to those cases for guidance.

In *Winnebago County v. Cannell*, 376 Ill. 277, 33 N.E.2d 478, 479–80 (1941), the zoning ordinance described various zoning districts and delineated those districts "as shown on the Use District map attached hereto and expressly made a part of this ordinance." No map was presented to the trial court. The Supreme Court of Illinois held that "without maps [the ordinance] is entirely meaningless," and affirmed the trial court's dismissal of the county's complaint to enjoin violation of the zoning ordinance. *Winnebago County*, 33 N.E.2d at 479.

The Supreme Court of Florida reached a similar conclusion in *Moon v. Smith*, 138 Fla. 410, 189 So. 835, 838 (1939). There, the ordinance said the city was divided into districts and the boundaries of the districts were "shown upon the map attached hereto and made a part of this ordinance being designated as the 'District Map' and said map and all [information on it] shall be as much a part of this ordinance as if [the information] were all fully described herein." The court concluded that no copy of the ordinance introduced into evidence had a map attached and without the map there was no description of the zones the ordinance attempted to establish. Consequently, the court ruled, "Because of the lack of definiteness of description and location of the several zones, the ordinance was ineffectual to establish the several zones." *Moon*, 189 So. at 839.

In *Keeney v. Village of LeRoy*, 22 A.D.2d 159, 160–62, 254 N.Y.S.2d 445, 446–48 (1964), the Village's ordinance established zoning districts, defined the permitted uses, and stated, "Said districts are shown, defined and bounded on the map accompanying this ordinance, entitled VILLAGE ZONE MAP, dated June 12, 1962, as amended and filed in the office of the Village Clerk. Said map and all explanatory matter thereon is hereby made a part of this Ordinance." *Keeney*, 22 A.D.2d at 160, 254 N.Y.S.2d at 446. Three maps were presented at trial. Each had the date "1962" but none had the date "June 12, 1962." The first map was used at the public hearing regarding the zoning ordinance. The second map was purportedly made from the first, was displayed in the Clerk's office, and was before the board when the ordinance was adopted. The third map was sent to the Clerk after the ordinance became effective and was "assumed" to be the official map. The board did not take action to amend the map during this time period. However, each map differed from the others as to boundaries of certain zoning districts.

The appellate court stated that it was unable to determine which map was the "official" one and concluded this constituted a defect that vitiated the ordinance. It reasoned that "every property owner is entitled to know [in which zoning district] his property has been placed. The determination should not be left to the village officials to decide from time to time by whim or caprice which one of three maps is the 'official' one."

*Keeney,* 22 A.D.2d at 162, 254 N.Y.S.2d at 447–48.

### C. Conclusions

■ It is undisputed that the 1983 zoning regulation is the one that controls the zoning of the Rohrbachs' parcel. That regulation established zoning areas by showing them on the map "dated July 5, 1983." The Board was not able to find and did not introduce that map into evidence. Because the text of the regulation relied on the map to establish the zoning and the map was not produced, the court could not ascertain the zoning adopted by the Board. *See Winnebago County,* 33 N.E.2d at 479 (the court could not "ascertain from the ordinance, itself, ... what [were] the regulations [that controlled] any particular piece of property"); *Moon,* 189 So. at 838; 1 Patricia E. Salkin, *American Law of Zoning* § 9:3 (5th ed.2008). The parties have not cited any authority regarding secondary proof of the content of a regulation, as we have found none.

Accordingly, we conclude, as a matter of law, that the Board did not establish the zoning classification of the Rohrbachs' parcel.

■ We reject the Board's contention that other maps presented at trial established that the Rohrbachs' parcel was zoned agricultural because, even assuming the content of the regulation could be established by secondary proof, the maps were insufficient to show the content of the regulation adopted by the Board in 1983.

The 1966 and 1973 maps that accompanied repealed versions of the county's zoning regulations may have reflected the zoning that existed before 1983, but they are not part of the current regulation, and are not probative of the zoning established in the July 5, 1983 map. The 1978 and May 8, 1983 maps do not indicate the zoning classification of the Rohrbachs' parcel. Similarly, the map approved on October 5, 1998 is insufficient to establish the parcel's zoning classification because there is no evidence that the Board ever reviewed or adopted the map in accordance with the procedures required by section 30–28–116, C.R.S.2008.

We further reject the argument that the Board's resolution, adopted less than two weeks before trial, compels a different conclusion concerning the legal effect of the 1998 map. The resolution "certifies all Elbert County zoning maps currently archived with the Elbert County Clerk and Recorder and the parcel zoning maps currently used by the Elbert County Planning Department as the current Zoning Maps as referenced in the Zoning Regulations." Even assuming this resolution was promulgated in full compliance with section 30–28–116, it does not incorporate any of the maps into a zoning regulation or amend the 1983 zoning regulation to incorporate any of the maps. Thus, without the July 5, 1983 map, the trial court still could not determine a parcel's zoning classification from the regulation itself.

Moreover, the resolution certifies "all Elbert County zoning maps" in the county clerk's office as current maps. This would appear to include all the maps discussed above, which accompanied repealed versions of the zoning regulations and differ in the zoning classifications indicated for various parcels. We do not perceive how these repealed and contradictory maps could be "current" maps under the existing zoning regulations or establish the parcel's zoning classification given their different zoning classifications. *See Keeney,* 22 A.D.2d at 162, 254 N.Y.S.2d at 447–48.

We further conclude that the text of the zoning regulations does not establish that the Rohrbachs' parcel is zoned agricultural. One of the copies of the zoning regulations provides, "the following zoning areas are hereby established: a) A Agricultural (60+ Acres)." However, the trial court specifically found that the Board had failed to prove that it had adopted a definition of the agricultural zoning area based on acreage. We also reject the Board's argument that the Rohrbachs' eighty-acre parcel was zoned agricultural based on the agricultural zoning provision that states that the *minimum area* for an agricultural parcel is thirty-five acres. We conclude that this provision does nothing more than state the minimum area of parcels that may be classified agricultural. It does

not state that all lots of more than thirty-five acres are necessarily zoned agricultural.

Last, we conclude that neither the Rohrbachs' application for a use permit nor Paul Rohrbach's testimony at trial compels a different conclusion.

 When a party makes an unequivocal formal and deliberate declaration in a judicial proceeding for the purpose of dispensing with proof of facts, the declaration constitutes a judicial admission and is binding on the party as evidence and may furnish the basis for a verdict. *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986); *Salazar v. American Sterilizer Co.,* 5 P.3d 357, 364 (Colo.App.2000); *Anderson v. Watson,* 929 P.2d 6, 9 (Colo.App.1996), *aff'd on other grounds,* 953 P.2d 1284 (Colo.1998).

Here, the Rohrbachs' use permit application to the Board stated that their parcel was zoned agricultural. In addition, at trial, Paul Rohrbach testified that when he submitted the application, based on the tax bill he had received from the county assessor, he was under the impression that his parcel was zoned agricultural.

We conclude that neither the permit application nor Paul Rohrbach's testimony constituted unequivocal, formal, and deliberate judicial admissions. *See Floresta, Inc. v. City Council,* 190 Cal.App.2d 599, 611, 12 Cal. Rptr. 182, 190 (1961) (application for zoning permit did not foreclose attack on zoning ordinance). To the contrary, in the trial court the Rohrbachs were plainly contesting the zoning of their property. In addition, although the zoning of a parcel may involve questions of fact, the ultimate issue is whether the controlling government entity has established the zoning of the parcel as a matter of law. Accordingly, we conclude that the permit application and Paul Rohrbach's testimony did not establish the zoning of his parcel.

In sum, because the Board did not introduce a copy of the July 5, 1983 map in this case, it failed to prove that the Rohrbachs' property was zoned agricultural. Thus, the trial court erred in granting the injunction, and the judgment must be reversed. Given this disposition, we need not address the Rohrbachs' remaining grounds for reversal. Accordingly, we express no opinion on the validity of the County's zoning regulations or whether proper statutory procedures were followed in their enactment. Nor do we express any opinion about the effect of this ruling on other parcels.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge WEBB and Judge LICHTENSTEIN concur.