ERVIN, Judge,
dissenting.
Although I agree with the majority that no reversible error has been demonstrated from this record regarding appellant’s point that the Commission erred in failing to establish a salient factor score and offense severity rating, I respectfully dissent to that portion of the majority’s opinion sustaining the Commission’s order aggravating appellant’s presumptive parole release date (PPRD) by an additional 37 months.
Farber was charged by information with the offenses of kidnapping, sexual battery and robbery. On July 18, 1978, the first two charges were nolle pressed following his plea of guilty to the lesser offense of involuntary sexual battery in violation of Section 794.011(4)(b), Florida Statutes. He was then committed to the South Florida State Hospital as a mentally disordered sex offender for approximately two years. On his release, he was sentenced to ten years’ imprisonment, with credit for time served, to be followed by five years of probation. The Commission, in establishing Farber’s PPRD, first aggravated his parole release date 25 months by its reliance upon information in a postsentence report reflecting *1018 that a firearm was used in the commission of the crime. The Commission next aggravated that date an additional 12 months, again by relying upon information in a postsentence report stating that Farber had “punched” the victim in the eye following the sexual battery. The sources of the Board’s information in both instances are not disclosed in the report — other than its reference to two counts in a charging document, one of which was later nolle prossed, alleging the commission of certain offenses by use of a “pistol.”
Farber objects to the Commission’s characterization of the starter pistol he used as a “firearm”, since he claims it is not capable of firing projectiles. I find substantial merit in this argument. Section 790.001(6), Florida Statutes, defines firearm as any weapon, including a starter gun, “which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; . . . . ” Since a starter gun is not designed per se to fire a projectile, he asserts that the burden was upon the Commission to establish by competent and persuasive evidence the weapon’s ability to expel a projectile by the action of an explosive, or that it could be readily converted to do so. Cf. M.M. v. State, 391 So.2d 366 (Fla. 1st DCA 1980), cert. denied, 411 So.2d 384 (Fla.1981); M.R.R. v. State, 411 So.2d 983 (Fla. 3d DCA 1982). He supports his position by referring to the arresting officer’s statement in the postsentence report, identifying the weapon as a “toy gun.” It is significant that nowhere in the report is any statement attributed to any person reflecting that the “firearm” was tested or examined in an effort to determine whether it complied with the statutory definition.
As to the second aggravation, Farber denies that he struck the victim at any time. The primary obstacle confronting Farber in his defense to the two aggravations is that no person is specifically identified in the postsentence report as the source of the information upon which the Commission based its aggravations; hence, he has had no opportunity to challenge the accuracy of the information which appears to be wholly hearsay.[1]
I.
Farber first contends that the procedures of the Commission amounted to a denial of due process in that they do not provide him with a proper consideration for parole. Any due process analysis must necessarily begin with a determination of whether a protectible liberty or property interest exists. For such an interest to exist
a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668, 675 (1978) (e.s.) (citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)). Whether a “legitimate claim of entitlement” to a particular interest exists must be determined by reference to state law. Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 *1019 L.Ed.2d at 561. Metropolitan Dade County v. Peterson, 311 So.2d 119 (Fla. 3d DCA 1975). It is well settled that “there is no absolute right to parole,” Moore v. Florida Parole and Probation Commission, 289 So.2d 719, 720 (Fla.1974), nor “[is] [t]here ... [any] constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.” Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2103, 60 L.Ed.2d at 675. Although Greenholtz ended any speculation that a general protectible right to parole might exist, it added that the various states might, through the enactment of statutes providing for parole, create such rights.
The next logical question then is whether Florida statutes have created a right to proper consideration for parole[2] to which Farber has a legitimate claim of entitlement, protectible by due process considerations. Such a right was explicitly recognized by the Florida Supreme Court in Moore:
While there is no absolute right to parole, there is a right to a proper consideration for parole. And this should be free from the consequences of a conviction not meeting the standards of Gideon v. Wainwright .... The Parole Commission is required, as any other body, to comply with constitutional requirements; it cannot deny parole upon illegal grounds or upon improper considerations.
289 So.2d at 720. An essential ingredient in sueh proper consideration for parole is the inmate’s right to have the “question of his eligibility for parole determined upon evidence which passes constitutional muster.” Id. at 720 (e.s.).
At the time Moore was decided, the system for granting or denying parole in Florida was “subject to allegations of arbitrary and capricious” actions. Ch. 78-417, § 1 Laws of Florida. Recognition of that situation prompted the Florida legislature in 1978 to enact the “Objective Parole Guidelines Act” for the purpose of establishing “an objective means for determining and establishing parole dates for inmates.” Id. The most radical change under the revised act was the creation of the “presumptive parole release date”, which was defined as the “tentative parole release date as determined by objective parole guidelines.” § 947.005(4), Fla.Stat. (1981) (e.s.). For the first time, the legislature mandated that within one year from the prisoner’s initial confinement, most would be assigned such a date. § 947.16(1), Fla.Stat. (1981). Once established, the date was to become binding on the Commission and was to be changed only for “reasons of institutional conduct or the acquisition of new information not available at the time of the initial interview.” § 947.16(4), Fla.Stat. (1981). The legislative intent was given further clarification with the provision that after a parole release date was set, it could “be modified only for good cause in exceptional circumstances.” § 947.173(3), Fla.Stat. (1981). The clear import of Chapter 947 is thus to create a reasonable expectation of parole on a given date if the prisoner’s institutional conduct remains satisfactory. § 947.174, Fla.Stat. (1981).
The right of a prisoner to have his eligibility for parole properly considered under the 1978 Act was recognized by this court in Daniels v. Florida Parole and Probation Commission, 401 So.2d 1351, 1355 (Fla. 1st DCA 1981), in which we stated that “a determination affecting when an inmate may be returned to society is perhaps the most crucial action affecting his prison life.” Similarly, the Fifth District has interpreted the Objective Parole Guidelines Act as requiring the Commission to “comply with constitutional requirements; it cannot deny parole upon illegal grounds or upon improper considerations.” Hardy v. Greadington, 405 So.2d 768, 769 (Fla. 5th DCA 1981) (citing Moore at 720). See also Jenrette v. Wainwright, 410 So.2d 575 (Fla. 3d DCA 1982).
*1020 Because it is apparent that Florida prisoners have, by virtue of state law, a legitimate entitlement to proper consideration for parole which is protectible by due process, it must next be determined what degree of due process is available to them. “It is axiomatic that due process ‘is flexible and calls for such procedural protections as the particular situation demands.’ ” Greenholtz, 442 U.S. at 12, 99 S.Ct. at 2106, 60 L.Ed.2d at 679 (quoting from Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)). It is also clear that “because parole release proceedings are not part of a criminal prosecution, a prisoner is not entitled to the full panoply of rights accorded a defendant at trial.” Franklin v. Shields, 569 F.2d 784, 791 (4th Cir.1977). In determining the degree of due process available to an inmate, it is instructive to review the due process rights presently afforded defendants in Florida subsequent to conviction, but prior to sentencing.
When a presentence report is prepared, a defendant must be given access to all factual material in that report, together with any physical or mental evaluations which are to be considered by the sentencing court. Fla.R.Crim.P. 3.713(b). The purpose of such disclosure is to enable the defendant to bring any error to the attention of the court and to offer testimony or information at the sentencing proceeding in an effort to explain or mitigate the information in the report. Fla.R.Crim.P. 3.713, 1972 Committee Note. If a defendant is to be sentenced as a habitual offender, he is entitled to even greater protections under the due process clause. For example, in such cases, the
defendant and his counsel should be provided a copy of the presentence report, including any part of the confidential section that the court may intend to rely on for any purpose under section 775.084, sufficiently in advance of the hearing to permit defendant adequate time to prepare and to respond, pursuant to any reasonable requirements imposed by the trial court for contesting the hearsay, if he wishes to contest any hearsay in the presentence report.
Eutsey v. State, 383 So.2d 219, 226 (Fla. 1980). If the defendant then disputes the truth of any material hearsay statements in the report, the state may be required to produce “corroborating evidence.” Id. at 225. See also, Adams v. State, 376 So.2d 47 (Fla. 1st DCA 1979). In the case of presen-tence reports to be relied upon in sentencing, the defendant has, at the very least, a right to review the factual content of such documents, to point out any inaccuracies in it and to attempt to mitigate the information at sentencing. While a defendant may have no right to a particular sentence within the range authorized by statute, he “has a legitimate interest in the character of the procedure which leads to the imposition of the sentence.” Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393, 402 (1977).
Similarly, I think it safe to say that although the protections of the Sixth Amendment are not available to a Florida inmate at the time his PPRD is established, he has by reason of the Objective Parole Guidelines Act, a legitimate constitutional interest in the character of the procedure that leads to the establishment of the PPRD— despite his inability to compel a particular release date. This conclusion, I suggest, is supported by a careful reading of Green-holtz, which sustained, as not violative of due process, the Nebraska statutory procedure for determining parole, although the procedure is based in great measure on subjective factors. In so holding, the Court placed great emphasis on the fact at the time of the inmate’s initial interview for consideration of a parole release date, the inmate is given the statutory opportunity to be heard, and, presumably, the right to insure that the records before the Board were the records pertaining to his case, because at such time the Board has before it the prisoner’s entire preconfinement and postconfinement record. 442 U.S. at 15, 99 S.Ct. at 2107, 60 L.Ed.2d at 680. In a significant footnote, the Court observed:
The only other possible risk of error is that relevant adverse factual information in the inmate’s file is wholly inaccurate. *1021 But the Board has discretion to make available to the inmate any information “[w]henever the board determines that it will facilitate the parole hearing.” Neb Rev Stat § 83-1, 112(1) (1976). Apparently, the inmates are satisfied with the way this provision is administered since there is no issue before us regarding access to their files.
442 U.S. at 15, 99 S.Ct. at 2108, n. 7, 60 L.Ed.2d at 680, n. 7.
On the contrary, the procedure accorded the inmate by the Florida parole system at the time of the initial interview is markedly different from that of Nebraska’s. In very general terms it permits him to appear before a hearing examiner, who shall explain to him the objective parole guidelines and discuss the inmate’s institutional conduct record. See Section 947.172, Florida Statutes, and Florida Administrative Code Rule 23-21.06(7). At the end of the interview, the inmate is then orally informed of the examiner’s proposed parole release date which will be recommended to a panel of the Commission. See Rule 23-21.06(8). Despite the inmate’s knowledge of the recommended date, the rules do not provide him the opportunity to challenge it, either at that time or during the time the panel considers the recommendation. That opportunity first occurs when he is notified in writing of the Commission’s action. He may then seek review of the action before the entire Commission, and can also submit “any written or printed evidence purporting to be an official court record” in support of his position. Id. Yet, he cannot present information contained within a postsen-tence report which was compiled by the Department of Corrections because he is denied access to that report under the provisions of section 945.10. Finally, he has no right to be present at the time the Commission considers his application to review the PPRD. Because the Commission is statutorily precluded from disclosing to the inmate the information contained within his prison files, he is severely handicapped in making a showing as to whether relevant, adverse factual information is wholly inaccurate.[3]
Although Greenholtz clearly holds that a state which has enacted a statutory expectation for proper consideration of parole need not, within the confines of due process, provide also “repeated, adversary hearings in order to continue the confinement ...”, 442 U.S. at 14, 99 S.Ct. at 2107, 60 L. Ed.2d at 680, it does implicitly condemn as violative of constitutional protections a system which determines a parole release date upon information which may be “wholly inaccurate” and which the affected inmate is provided no meaningful opportunity to challenge. I think, then, it is important that although the inmate may not have the constitutional right to confront and cross-examine his accusers directly, there must at the minimum be some opportunity for him to dispute the accuracy of the relevant, adverse information supporting the parole release date.
The competency and persuasiveness of this information can be established by several means other than at an adversarial hearing. Thus, if the adverse information, relied upon by the Commission to establish a PPRD, is contained in a presentence report, the inmate would normally at the time of sentencing have been accorded the opportunity to challenge its accuracy, see Florida Rule of Criminal Procedure 3.713, and if he did not then avail himself of the opportunity, I think the Commission could properly consider that he had waived his right to contest it later at a postsentence proceeding. Additionally, if the facts are established at a plea colloquy during arraignment in open court, see Florida Rule Criminal Procedure 3.170(j), which are then *1022 admitted by the defendant, those facts, if properly authenticated, by say a court reporter’s notes, could also serve as a basis for a parole release date. Again, if the adverse, relevant information is contained in a transcription of a trial proceeding at which time the defendant had the right to confront his accusers, I think there can be little question as to the competency and persuasiveness of such evidence supporting the Commission’s later decision. What is important, however, is that some meaningful opportunity be furnished to the inmate to challenge evidence on which a PPRD is based, either at some stage of the criminal or postsentence proceeding.
In the case at bar, the majority appears to find no difficulty in sustaining the aggravation relating to the use of a firearm because it was supported by information alleged in a charging document — although the defendant did not admit his guilt to such offense. In my judgment there is a difference between the competency and persuasiveness of evidence that relates to an admission of an offense involving conduct included within that offense which later forms the basis for a PPRD, and that alleged only in a charging document, which a defendant is neither convicted of nor admits. In the latter case, if a defendant enters a plea to a lesser offense, which does not include as an element, or involve conduct that later gives rise to information on which a parole decision is based, I fail to see the materiality or relevancy of such information as establishing any foundation for a parole decision. It is no less hearsay than that attributed to unnamed sources in a postsentence report. The evil in both instances remains the same: Although the inmate is neither tried and convicted for the offense charged, nor of a lesser offense which includes conduct forming the basis of “relevant adverse information,” his parole release date is lengthened because the Commission relies, without more, upon unverified facts.
This is precisely what occurred in the instant case. Appellant was charged in one count of an information with robbery by use of a pistol. This count was nolle prossed. He was also charged with involuntary sexual battery carried out with the use of a pistol. He pled guilty to the lesser offense of sexual battery by threatening to use force or violence likely to cause the victim serious personal injury, a violation of section 794.011(4)(b), which does not include as an element the use of a deadly weapon. Neither does the record reveal that the use of such weapon is conduct that may be lesser included. Surely the appellant’s plea admission is not a record foundation for the Commission’s determination that a firearm was used in carrying out the offense of sexual battery.
I also respectfully disagree with the majority’s reference to Battis v. Florida Parole & Probation Commission, 386 So.2d 295 (Fla. 1st DCA 1980), as supporting its conclusion that charging documents may be relied upon by the Commission in establishing a PPRD. The issue of the competency and persuasiveness of such documents was not before the court in Battis. Certainly the court was not confronted with any question of whether conduct alleged in an information or indictment, which was not admitted by a defendant, could later form the basis for a parole decision.
Finally, in regard to the majority’s af-firmance of the second aggravation, I must take issue with its conclusion that “when the prisoner has not come forward with any evidence casting doubt upon the PSI’s information, the Commission may rely on the PSI.” Ante at page 1017. I am unaware of any opportunity under the procedure currently afforded the inmate for him to contest in a more meaningful way the accuracy of the information used by the Commission to aggravate his PPRD. Farber did all he could do once he was advised that the parole decision was based in part on information that he had struck the victim. He denied it. No statement is attributed to the victim in the report that he did so. The record contains no transcription of the arraignment wherein he makes such admission. The offense to which he pled guilty does not include as an essential element the use of such force. In short, Farber is faced *1023 with an aggravation wholly based upon hearsay, which he is provided no means of challenging either at the administrative or appellate levels. Such a procedure cannot be said to comport with due process.
This court has expressed concern over the Commission’s reliance on postsentence reports, observing that
reports such as postsentence investigation reports written years after their subject offenses were committed may fail to satisfy the requirements of competence and persuasiveness necessary to allow their consideration when applying aggravating or mitigating factors.
James v. Florida Parole and Probation Commission, 395 So.2d 197, 198 (Fla. 1st DCA 1981). Although the constitutional ramifications of the use of such reports were not directly at issue in James, it was there observed:
The danger of relying on a report written long after an inmate confinement to determine his presumptive parole release date is readily apparent. Section 945.-10(2), Fla.Stat. (1980), precludes an inmate from reviewing the contents of the report should it be contained in the files of the Department of Corrections. Hernandez v. Wainwright, 371 So.2d 596 (Fla. 1st DCA 1980). Thus, the contents of the report is [sic] immune from challenge. No neutral panel reviews its competence or its persuasiveness. To allow the unsubstantiated hearsay generally contained in such reports to be the sole basis for the Commission’s presumably objective decisions concerning an inmate’s presumptive parole release date, despite recognition that no factors contained therein are subject to challenge, particularly by the inmate, would inevitably raise due process considerations ....
Id. at 198, n. 1.
The dangers recognized in James are clearly evident from the facts now before us, revealing that the postsentence report was the primary documentation used by the Commission in determining Farber’s PPRD. Because that report was not compiled until two and one-half years after the crime was committed, Farber obviously could not be given access to the information within it prior to sentencing. Section 945.10(2), Florida Statutes, moreover precludes him from examining the report once it is compiled. Finally, the record discloses that it was only after the PPRD was established that Far-ber first had the opportunity to challenge it on administrative review as well as the alleged inaccuracies within it.
The situation before us is strikingly similar to that in Rolle v. Florida Parole and Probation Commission, 426 So.2d 1082 (Fla. 1st DCA 1983), in which a salient factor score was reversed and the cause was remanded for further proceedings because the competency and persuasiveness of the information on which the Commission relied in establishing the score could not be substantiated. As in the present case the information was contained within a postsen-tence report, the accuracy of which was contested by the inmate. I would therefore, consistently with the course tracked in Rolle, reverse the two aggravations imposed, and remand the cause to the Commission with directions that if it decides again to aggravate Farber’s PPRD, that it corroborate in a more persuasive manner the information contained within the postsen-tence report on which it based its decisions to aggravate.
II.
Although inmates are clearly not entitled to the full “panoply of rights” afforded defendants at trial or even at the time of sentencing, they must be afforded a minimum level of due process protection to insure that their eligibility for parole is properly considered on the basis of evidence which will pass constitutional muster. At the same time, a denial of access to even those portions of their pre- or postsentence reports and their Department of Corrections files relied upon by the Commission in establishing their PPRDs operates to transform their right of review into nothing more than a meaningless ritual.
In arriving at a procedure which will provide due process protections and, at the *1024 same time, eliminate the disparate treatment mandated by Section 945.10, Florida Statutes, I consider that a procedure which follows that enacted by Congress for application by the United States Parole Commission would clearly pass constitutional muster. Like Florida’s act, the federal counterpart provides for determination of a parole date by reference to objective factors. 18 U.S.C.A. § 4208 (Supp.1982). The federal procedures offer more protection to the inmate in that within thirty days prior to the parole date determination, the inmate must be provided with “reasonable access to a report or other document to be used by the Commission in making its determination.” 18 U.S.C.A. § 4208(b) (Supp.1982). Such access is not unbridled; the statute expressly provides that the right of access shall not apply to
(1) diagnostic opinions which, if made known to the eligible prisoner, could lead to a serious disruption of his institutional program;
(2) any document which reveals sources of information obtained upon a promise of confidentiality; or
(3) any other information which, if disclosed, might result in harm, physical or otherwise, to any person.
If any document is deemed by either the Commission, the Bureau of Prisons, or any other agency to fall within the exclusionary provisions of subparagraphs (1), (2), or (3) of this subsection, then it shall become the duty of the Commission, the Bureau, or such other agency, as the case may be, to summarize the basic contents of the material withheld, bearing in mind the need for confidentiality or the impact on the inmate, or both, and furnish such summary to the inmate.
18 U.S.C.A. § 4208(c) (Supp.1982). Access to postsentence reports pursuant to that statutory scheme has specifically been upheld in Butson v. Chairman, United States Parole Commission, 457 F.Supp. 841 (D.Colo.1978) and Wilden v. Fields, 510 F.Supp. 1295 (W.D.Wisc.1981). The federal statute thus contemplates a balancing of competing considerations: the right of the inmate to counter information contained in a document used by the federal commission which may be proved erroneous, and the right of the custodial institution to maintain harmony or to protect the confidentiality of its sources. No such balancing of disparate interests is evident, however, from a reading of Section 945.10, which indiscriminately bars the inmate’s access to all information contained within his files, regardless of whether the information is otherwise accessible to the public, such as a document on file in the public records of a county clerk’s office. Moreover, the literal language of the statute permits a newspaper reporter the right to examine sensitive documents and to report, via the media, their contents to the public, while denying the inmate — a person who may be substantially affected by an agency’s reliance on such information — the opportunity to review.
The adoption of procedures in Florida similar to those now in use in the federal system would insure that minimal due process requirements are met in protecting the inmate’s right to proper consideration of parole and would, at the same time, eliminate the unequal treatment created by operation of Section 945.10, Florida Statutes.

. By statute, Farber is not even entitled to access to the postsentence report. Section 945.10, Florida Statutes, provides in pertinent part:
(1) Except as provided below, information in a presentence investigation report made by the Department of Corrections shall be confidential and shall be available only to officers and employees of the court, the Legislature, the Parole and Probation Commission, the Department of Health and Rehabilitative Services, the Department of Corrections, and public law enforcement agencies in the performance of a public duty or, with the written permission of the Department of Corrections, to parties establishing legitimate research purposes.... The Department . . . shall promulgate rules and regulations to prevent the disclosure of confidential information to unauthorized parties, except as provided above....
(2) No inmate of any institution, facility, or program of the Department of Corrections shall have access to any information contained in the files of the department. The department shall restrict release of information to any person except members of the news media and those listed in subsection (1) when there is reasonable cause to believe that such person may divulge such information to the inmate.
§ 945.10, Fla.Stat. (1981) (e.s.).

. Observe that Section 947.16(1), Florida Statutes, provides that every person whose sentence or cumulative sentences total 12 months or more shall, with certain exceptions, “be eligible for consideration for parole."

. Although Farber does not expressly contend in this appeal that he was denied access to the report at the administrative level, it does not appear from the record that he was at any of the stages of review before the Commission furnished a copy of the report. A copy of the report was made part of the record on appeal, however. Yet even if Farber were given a copy, he still was provided no opportunity to challenge the information’s accuracy under the procedure accorded him by the Florida parole system, and this is the heart of the deficiency in the method by which PPRDs are determined.